Lucia Chase Ewing v. Commissioner.
Ewing v. Commissioner
Docket No. 7077.
United States Tax Court
1946 Tax Ct. Memo LEXIS 69; 5 T.C.M. (CCH) 908; T.C.M. (RIA) 46235; October 4, 1946
*69 Harry J. Leffert, Esq., 61 Broadway, New York 6, N. Y. and Milton Young, Esq., for the petitioner. Scott A. Dahlquist, Esq., for the respondent. HARLAN Memorandum Findings of Fact and Opinion HARLAN, Judge: This proceeding involves deficiencies declared in the income tax liability for the years 1939 and 1940 in the respective amounts of $8,061.78 and $13,627.31. The question presented is as to the allowability of deductions taken by the petitioner of $58,100 during 1939 and $241,500 during 1940 on the ground that said amounts were written off by the taxpayer in the respective years as bad debts. Findings of Fact Petitioner is an individual residing in New York City and she filed her returns for the years involved herein with the collector of internal revenue for the third district of New York. She kept her accounts for tax purposes on the cash receipts and disbursements basis. Advanced Arts Ballets, Inc., was organized in the State of New York in December of 1937 for the purpose of producing ballets. Petitioner was a majority stockholder but not an officer or director in said corporation. In November 1939 she purchased the outstanding stock of the corporation *70 and during all times herein involved she was the holder of all of the issued and outstanding stock. During 1938 Advanced Arts Ballets, Inc., produced a ballet known as the Mordkin Ballet, and during that same year the petitioner, beginning in January 1938 and continuing throughout the year, advanced to the corporation sums aggregating $141,900. The corporation persisted in its efforts to promote the Mordkin Ballet until the latter part of 1939 when a new ballet, known as The Ballet Theatre, was undertaken by Advanced Arts Ballets, Inc. During 1939 petitioner loaned to the corporation, to enable the corporation to meet its deficit in the promotion of the Mordkin Ballet and in the creation of The Ballet Theatre, $116,200. At the time of the preparation of her income tax return for 1939 the taxpayer charged off as a bad debt one half of the amount loaned to Advanced Arts Ballets, Inc., or $58,100. At no time prior to 1940 did she ever claim any specific tax deduction as a bad debt for the amounts loaned to Advanced Arts Ballets, Inc., during 1938. The corporation, in 1940, gave a few performances of The Ballet Theatre, which performances were favorably received by the public, *71 but before sufficient performances could be given to produce a financial success, the corporation lost its lease on the only available theatre and the performances were necessarily discontinued. In September a new corporation was created known as The Ballet Theatre, Inc., and all of the property of The Ballet Theatre was transferred by Advanced Arts Ballets, Inc., to The Ballet Theatre, Inc., for a consideration of $100,000 represented by 250 shares of stock delivered and 250 additional shares to be delivered. During 1940 petitioner issued checks to Advanced Arts Ballets, Inc., totaling in value $136,500 but by agreement of counsel it is stipulated that during that year she actually loaned Advanced Arts Ballets, Inc., $141,500. In her 1940 income tax return petitioner claimed as "Bad debts $241,500." In explaining this item her return states: "Advanced to insolvent corporation ascertained to be worthless." All of the claimed "loans" by petitioner to Advanced Arts Ballets, Inc., were made on a very informal basis. Satisfactory bookkeeping entries by the corporation have not been produced. However, the taxpayer has produced a list of checks which show these itemized payments and *72 the finding is based upon this list and the balance sheets of Advanced Arts Ballets, Inc., for 1938, 1939 and 1940. The corporation at no time authorized these borrowings, no notes were given and no interest obligation imposed on the loans. The taxpayer relied solely on the "success" of the corporate venture for her repayment. At no time has the corporation made any payment to the taxpayer on the loans. None of the partially worthless bad debt deductions claimed by the taxpayer reduced her position as a creditor at any time to an amount less than the amount she could have recovered from Advanced Arts Ballets, Inc., in the event of a suit against that company or in the event of a bankruptcy of that company. The advancements made by petitioner to Advanced Arts Ballets, Inc., are bona fide loans, and the amounts claimed as deductions for partially worthless bad debts resulting from such loans are justified by the facts produced by the taxpayer, and are allowable deductions. Opinion The respondent in this case rejected petitioner's claim for a bad debt deduction solely because of the unusual circumstances that surrounded the advancement by the taxpayer to Advanced Arts Ballets, *73 Inc. The respondent has made no contention that the deductions claimed by the taxpayer for partial worthlessness of the debts involved were in excess of the amount justified by the financial condition of the debtor. In fact, respondent's position is that the financial position of the debtor during the taxable years involved was so hopeless that the advancements made by the taxpayer according to the contentions of the respondent must have been advancements to capital and not bona fide loans. To say the least, the facts disclosed by the testimony, exhibits and stipulated facts in this case present a most unusual picture. A woman, who is herself a danseuse working for a company at a salary of $75 a week, has advanced to a corporation for the promotion and development of the ballet in America a sum considerably in excess of $400,000 in three years. These advancements were made without requiring any evidence of indebtedness such as promissory notes, without fixing any date for repayment, without requiring any interest and with the realization that the tangible assets of the corporation were not sufficient at any time during the taxable period to repay any material part of the loan. Such *74 disposition of money could only be accounted for on the basis of an abnormal and excessive enthusiasm for the object of the loan and an exceptionally optimistic belief in the value of the project for which the loan was made. However, we have found no cases and none have been cited by respondent which require that a loan be made on reliable security or that any strict yardstick may be created out of the quantity of security available for the repayment of the loan by which one advancement may be considered a loan and another a transaction of a different character. In judging whether or not these advancements by the taxpayer were loans on the one hand, or gifts or advancements to capital on the other, the whole criterion set forth in the cases is as to whether or not the person making the advancements considered them to be loans and expected them to be repaid. See , affd., , wherein it is stated: Advances are an additional contribution of capital if they are intended to enlarge the stock investment, but not if they are intended as a loan. On the other hand, see , *75 in which the stockholder had no belief that the money would ever be repaid and it was held that advances under those circumstances were not loans. In the case at bar the taxpayer testified that she expected to be repaid; that her expectations were based upon the ultimate "success" of the company; and, from the whole record, it is shown that she had an overabundance of confidence in that ultimate success. The balance sheets of the corporation show that these advances by the taxpayer were treated by the corporation as loans. The Commissioner contends that such statements in the balance sheets are "self-serving". It is difficult for us to see how a statement on a balance sheet, which would make the corporation hopelessly insolvent could be self-serving so far as the corporation is concerned. The case of , discloses facts wherein the sole stockholder of a corporation advanced money to that corporation under conditions not a great deal more justifiable than in the case at bar. However, the Circuit Court in that case said that the whole question was one of intent by the taxpayer at the time the advancements were made and, *76 inasmuch as the Board of Tax Appeals had not given the question of the intent of the taxpayer proper and full consideration, the case was remanded to the Board of Tax Appeals for further consideration on this point. The import of this whole case, however, was that the fact that the advancements seemed indefensible from an economic viewpoint was not the standard by which the character of the advancements could be determined. The Commissioner relies almost wholly on the case of . That case is at once basically and radically distinguishable from the case at bar by the following statement in the facts: * * * It was agreed that petitioner should furnish the finances, and that petitioner and McCulloch would divide the stock to be issued by the company equally between them. Obviously in that case advancements were purely capital advancements because they were to be repaid by issuing to the taxpayer half of the capital stock of the company. There is nothing in common between the Thomas case and the case at bar. From the above conclusions of law we find that the bad debts deduction claimed for the taxable year 1939 in the amount of $58,100 should *77 be allowed. As to the deduction for 1940, the taxpayer has not made a very clear explanation except to show that in 1938 she had advanced $141,900; that in 1939 there was an advancement of $58,100 for which a bad debt deduction had never been made; and in 1940 she had loaned Advanced Arts Ballets, Inc., $141,500. If these items are added the total is $341,500. During 1940 the taxpayer has testified that Advanced Arts Ballets, Inc., was credited on the books of The Ballet Theatre, Inc., with stock of the value of $100,000. The valuation of this stock has not been questioned by the respondent and since the taxpayer was the sole stockholder of Advanced Arts Ballets, Inc., she was the beneficial recipient of this stock. Therefore, deducting the value of $100,000 from the total of her credits against Advanced Arts Ballets, Inc., which had not been previously treated as partially worthless debts by the taxpayer, leaves a balance of $241,500 as the amount of her partially worthless bad debt claim against Advanced Arts Ballets, Inc. Since this is the amount she actually claimed in her 1940 return, it is evidently a valid explanation of that deduction. It is our decision that the claims *78 of the petitioner in her 1939 and 1940 income tax returns for bad debt deductions should be allowed. Judgment will be entered for the petitioner.